# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSÉ CURIEL, | ) |
|     **Plaintiff,** | ) ) ) |
| v. | )     No. 06 C 5880 |
| LARRY STIGLER AND RODNEY BRADY, | ) ) ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, officials at the Stateville Correctional Center, violated the plaintiff's constitutional rights by subjecting him to cruel and unusual punishment. More specifically, the plaintiff alleges that during a prison-wide "shakedown," he was forced to stand handcuffed in a prison recreation yard in near-ninety-degree heat for several hours in pain and without being given food, water, or the opportunity to use the facilities. This matter is before the court for ruling on the defendants' motion for summary judgment. For the reasons stated in this order, the motion is granted.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most

favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *Outlaw v. Newkirk*, 259 F.3d 833, 840 (7th Cir. 2001); *Nash v. DeTella*, No. 00 C 2784, 2001 WL 1160840, *2 n. 5 (N.D. Ill. Oct. 2, 2001) (Zagel, J.)

## FACTS

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their summary judgment motion, the defendants served on the plaintiff the required notice under Local Rule 56.2, advising the plaintiff what he needed to do to contest the motion, and specifically what he needed to do to dispute the defendants' statement of uncontested facts. Despite this, the plaintiff has not submitted a statement of contested facts with citations to the record; instead, he simply elaborates on or equivocates about certain facts in his opposing brief. But unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., Johnson v. Spiegel, Inc.*, No. 02 C 0680, 2002 WL 1880137, at *4 (N.D. Ill. Aug. 15, 2002) (Pallmeyer, J.), *citing In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985).

The plaintiff's failure to respond to the defendants' statements of material facts as directed warrants disregard of any contrary assertions he makes in his briefs. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003):

> Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion. . . . We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission. *See, e.g., Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000). A district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993).

Nevertheless, because the plaintiff is proceeding *pro se*, the court will consider the factual assertions he makes in his brief, but only to the extent that the plaintiff could properly testify about the matters asserted at trial. Affidavits must concern facts about which the affiant is competent to testify, must be based on personal knowledge, and must set forth such facts as would be admissible in evidence. Fed. R. Civ. P. 56(e). A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. Furthermore, a party may not create an issue of fact with an affidavit containing assertions that contradict previous depositions or other sworn testimony. *See, e.g., Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005).

The court therefore finds that the following facts, gathered from the defendants' statement of facts, the plaintiff's deposition testimony, and other exhibits, are undisputed for purposes of this motion:

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Amended Complaint, p. 2, Section I.) Defendant Larry Stigler was the Tactical Team Commander at Stateville during the time period in question. (Defendants' Motion for Summary Judgment, p. 2, ¶ 3.) Defendant Rodney Brady was a member of the Illinois Statewide Tactical Team at all times relevant to this action. (*Id.*, ¶ 4.)

On September 1, 2005, Stateville's Tactical Team conducted a prison-wide shakedown of the facility. (Amended Complaint, p. 6.)

Between the hours of 9:00 a.m. and 10:00 a.m, all inmates in the plaintiff's cellhouse were placed in handcuffs and removed from their cells. (Defendants' Exhibit A, Deposition of José Curiel, at p. 19.) [The plaintiff was not wearing a watch during the shakedown and could only guess the approximate times outlined in this Facts section. (*Id.*, p. 23.)]

When he was handcuffed, the plaintiff complained to a medical technician, who told him that he was probably "sore" but that the pain would go away. (*Id.*, p. 31.)

The plaintiff and his fellow cellhouse occupants were first taken to the inmate dining room, where they remained for about an hour and a half to two hours for a roll call. (*Id.*, p. 19.) The inmates were then escorted to the prison gymnasium, where they were all had to provide urine samples for analysis. (*Id.*, p. 20.) Water was given to prisoners who could not urinate. (*Id.*, pp. 21-22.) The inmates remained in the gym for about an hour or so. (*Id.*, p. 22.)

At about 11:00 or 12:00, upon completing the urinalysis tests, the inmates were sent to the segregation yard while their cells were searched. (*Id.*, p. 24.) The plaintiff and other prisons remained in the segregation yard between three and five hours[1] waiting for the tactical team to

---

[1] The defendants have not submitted their own time line and the plaintiff has provided
(continued...)

complete its search of the plaintiff's cellhouse. (*Id.*, pp. 24, 28, 54.) Shakedowns at Stateville normally last about three hours and inmates are usually held in the gymnasium rather than the yard. (*Id.*, pp. 51-52.)

On the date in question, the weather temperature reached a high of 85.7 degrees Fahrenheit. (Defendants' Exhibit H, Weather Station History for Caton Farm, Plainfield-Joliet, Illinois.) Although the yard was too crowded to allow much movement, the plaintiff was able to sit down on the ground while in the segregation yard. (Plaintiff's Depo., pp. 25, 27.) There was no shady area in the yard where the plaintiff could seek refuge from the hot sun. (*Id.*, p. 27.)

While confined to the segregation yard, the plaintiff felt nauseated from the heat, his head ached, and his shoulder hurt from the handcuffs. (*Id.*, pp. 13, 26, 38.) The plaintiff did not collapse from the heat or show outward signs of distress. (*Id.*, p. 39.) The plaintiff had no pre-existing injuries that would have been exacerbated by being placed in handcuffs for several hours. (*Id.*, pp. 62-63.)

Medical technicians were present on the segregation yard during the shakedown. (Defendants' Exhibit I, Affidavit of Med Tech Seymour White, ¶ 3.) Although the plaintiff observed one or two medical technicians tending to inmates who had requested assistance, the plaintiff did not, himself, ask for medical attention. (Plaintiff's Depo., pp. 34-37.) The plaintiff

---

[1](...continued)
inconsistent statements in his complaint, his deposition testimony, and his brief opposing summary judgment. As noted *supra*, the plaintiff cannot contradict his own deposition testimony. "[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions. . . . If such contradictions were permitted . . .'the very purpose of the summary judgment motion–to weed out unfounded claims, specious denials, and sham defenses–would be severely undercut.'" *Ineichen, supra*, 410 F.3d at 963 (citation omitted). The entire shakedown may have lasted anywhere from three to ten hours. As will be discussed *infra*, the court finds that irrespective of how long the challenged search that day lasted, the plaintiff is not entitled to relief under 42 U.S.C. § 1983.

5

did not ask a correctional officer for help, either. (*Id.*, pp. 34, 36.) At about 1:00 p.m. or 2 p.m., the plaintiff asked for a cup of water. (*Id.*, pp. 37.) The plaintiff received water between 3 p.m. and 4 p.m, after the shakedown was completed. (*Id.*, p. 44-46; Defendants' Exhibit B, Committed Person's Grievance, at p. 2.)

The plaintiff was served dinner, including a beverage, at 5:00 p.m. (Plaintiff's Depo., pp. 45-46.)

The purported pain the plaintiff experienced on the segregation yard due to the heat and handcuffs subsided within a few hours. (*Id.*, p. 30.) The plaintiff did not seek medical treatment in the hours, days, weeks, or months following the shakedown in connection with any alleged injuries sustained from the ordeal. (*Id.*, pp. 30-32.) The plaintiff nevertheless maintains that to this day, he continues to experience pain in his right elbow and left hand, that he has a bad shoulder, that his right hand remains weak, and that he has a "funny sensation" in his wrist, all because he remained in handcuffs so long that day. (*Id.*, pp. 15-16, 30, 32-33.)

## **DISCUSSION**

No outcome-dispositive facts are in dispute and the court concludes that the defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that either the plaintiff's shackling or his placement in the hot segregation yard for several hours during a cellhouse search rose to the level of a constitutional violation. Accordingly, summary judgment is granted in favor of the defendants.

As discussed in the court's prior order denying the defendants' motion to dismiss the complaint for failure to state a claim, "[t]he Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity

of the crime for which an inmate was imprisoned, or are totally without penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004), *quoting Meriwether v. Faulkner*, 821 F.2d 408, 415 (7th Cir. 1987) (*citing Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir. 1986)).

A conditions-of-confinement claim has two components–an objective test (whether the conditions can be considered inhumane) and a subjective test (whether the defendants acted with a culpable state of mind). *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Whitman*, 368 F.3d at 934, *quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotations omitted). If the conditions complained of pass this threshold, courts then must determine the prison official's subjective state of mind; that is, whether "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Whitman*, 368 F.3d at 934, *citing Farmer*, 511 U.S. at 847; *see also Johnson v. Phelan*, 69 F.3d 144, 149 (7th Cir. 1995).

### A. Objectively Serious Condition

Although the court previously found that the complaint stated a colorable cause of action sufficient to withstand a motion to dismiss, the more fully developed record shows that the plaintiff suffered no deprivation of constitutional magnitude. Generally, the standard for determining whether prison conditions satisfy the objective component of the Eighth Amendment focuses on whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Farmer*, 511 U.S. at 833-34; *see also Lunsford v. Bennett*,

17 F.3d 1574, 1579 (7th Cir. 1994). To meet this standard, the deprivation must be "extreme;" mere discomfort is not sufficient. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Not all restrictive or even harsh prison conditions are actionable under the Eighth Amendment. *Rhodes*, 452 U.S. at 347. Deprivations must be "unquestioned and serious" and contrary to "the minimal civilized measure of life's necessities." *Id.* The court will address each of the plaintiff's ostensible hardships in turn.

**1. Missed Meal(s)**

One or two missed meals are not actionable as Eighth Amendment violations. "The state must provide an inmate with a healthy, habitable environment." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (citation omitted); *McGee v. Monahan*, No. 06 C 3538, 2007 WL 2728756, at *9 (N.D. Ill. Sep. 14, 2007). Correctional officials must ensure that inmates receive adequate food, clothing, shelter, protection, and medical care. *Henderson v. Sheahan*, 196 F.3d 839, 844 (7th Cir. 1999). However, while there is no question that the Eighth Amendment requires correctional officials to provide inmates with an adequate diet, the occasional missed meal does not rise to the level of a constitutional violation. *See, e.g., Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, at *8 (N.D. Ill. May, 14, 2003) (Manning, J.) (citations omitted); *Cunningham v. Eyman*, No. 95 C 2900, 2000 WL 748098, at *6 (N.D. Ill. Jun. 9, 2000) (Moran, J.).

It is unclear from the record whether the plaintiff went without both breakfast and lunch or lunch only; in either event, the matter is not actionable under 42 U.S.C. § 1983. There is an ancient maxim, *de minimis non curat lex*, "the law cares not for trifles." *Ehrlich v. Mantzke*, No. 01 C 7449, 2002 WL 265177, *4 (N.D. Ill. Feb. 25, 2002) (Kocoras, J.). The Constitution does

8

not concern itself with *de minimis* matters. Going without food for up to ten hours on a single occasion due to a special security procedure does not implicate the Eighth Amendment.

**2. Water**

For the same reasons, the lack of drinking water under the circumstances of this case is not actionable under 42 U.S.C. § 1983. As the courts have stated time and again, "the Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons." *Sherman v. Lane*, No. 92 C 2192, 1998 WL 111649, at *8 (N.D. Ill. Mar. 9, 1998) (Andersen, J.); *U.S. v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007). Occasional discomfort is "part of the penalty that criminal offenders pay for their offenses against society." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994), quoting *Rhodes, supra*, 452 U.S. at 346. The inmates went without food and water only as long as it took the tactical team to conduct its "shakedown" of the plaintiff's cellhouse–at most, ten hours. In the absence of any health problem necessitating water, the matter is *de minimis*.

**3. Handcuffs / Inability to Use the Facilities**

Requiring the plaintiff to remain handcuffed for several hours did not violate his constitutional rights. The U.S. Supreme Court has held that police executing a search warrant on a house may reasonably detain the occupant in handcuffs while the search is in progress because governmental interests outweigh the "marginal intrusion." *See Muehler v. Mena*, 544 U.S. 93, 99 (2005). Certainly, if police can handcuff a private citizen for several hours during a search without offending the Constitution, then prison officials must be accorded the same deference in their treatment of convicted prisoners, who enjoy much more limited constitutional protections. The court is satisfied that keeping the plaintiff shackled during the shakedown did not violate the Eighth Amendment. *See, e.g., Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir. 1999) (prisoner

who was restrained in handcuffs and shackles for 24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation). Although it is most regrettable that the plaintiff urinated on himself while he remained handcuffed outside, wet pants for a couple of hours cannot be said to be an objective violation of the Eighth Amendment.

Nor has the plaintiff made a triable showing that he was handcuffed in such a way as to cause any real injury. The plaintiff asserts that he objected when he was first placed in handcuffs; the medical technician told him that he was "sore" but that the feeling would go away. (Plaintiff's Depo., p. 31.) Thereafter, the plaintiff never complained to any correctional officer or medical technician on the segregation yard that he was in pain. (*Id.*, pp. 34, 36.) The plaintiff had no pre-existing injuries that would have been exacerbated by being placed in handcuffs for several hours. (*Id.*, pp. 62-63.) Furthermore, following the shakedown, the plaintiff never sought medical attention for injuries sustained during the process. The plaintiff has adduced no evidence showing that the lingering injuries he complains of today can be attributed to the events of the day in question. The record is devoid of evidence from which one could infer that the plaintiff suffered anything more than temporary discomfort.

**4. Heat**

Similarly, the court concludes that spending several hours under a hot sun did not rise to the level of an Eighth Amendment violation. Inmates have a right to be free from extreme hot and cold temperatures. *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986); *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). But in this case, involving a single afternoon under the sun–in the same yard where inmates spend five hours a week for their outdoor recreation–the court cannot find that the plaintiff's exposure to heat amounted to cruel and unusual punishment. *Compare Dixon, supra*, 114 F.3d at 643 (the duration of the deprivation must be

considered in determining whether conditions of confinement are unconstitutional); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (same). "Punishment" in the constitutional sense requires allegations of extreme deprivations over an extended period of time. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

In short, none of the relatively brief hardships the plaintiff experienced during the shakedown amounted to privations so objectively serious as to implicate the Eighth Amendment.

**B. Subjective Intent**

Even assuming (without finding) that the conditions the plaintiff endured did amount to objectively serious deprivations, the plaintiff has not satisfied the subjective component of the court's inquiry. That element relates to a defendant's state of mind and requires a showing of deliberate indifference. *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002). A negligent or inadvertent exposure to harm is insufficient to state a Section 1983 claim because such an action is not an "unnecessary and wanton infliction of pain," and is not "repugnant to the conscience of mankind. *See, e.g., Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (involving alleged deliberate indifference to medical care).

In the case at bar, there is no dispute that valid security concerns motivated the shakedown. Furthermore, it is uncontested that the defendants penned the plaintiff and his fellow inmates in the segregation yard only for as long as it took them to conduct the cellhouse search. There was no malicious intent in leaving the prisoners handcuffed under the sun.

Moreover, nothing in the record suggests that the plaintiff had a manifest need for relief from the heat or handcuffs. He did not faint or fall down (*see* Plaintiff's Deposition at p. 39), he did not complain about the conditions on the yard (*id.*, pp. 34-36), and he did not ask for medical attention. (*Id.*) Thus, even accepting as true that the plaintiff was suffering as much as he says

11

he was, the lack of outward signs of distress, along with his failure to request assistance, belie any inference that the defendants were subjectively aware of his need for succor. The defendants cannot be held liable for issues about which the plaintiff did not put them on notice. The plaintiff has not satisfied either the objective or subjective elements required for liability under 42 U.S.C. § 1983.

### C. Personal Involvement

Even assuming that the plaintiff did articulate a triable Eighth Amendment claim, he has not stated a cause of action against the named defendants. In order to recover damages against a state actor under § 1983, a plaintiff must show the actor was personally and directly responsible for the constitutional deprivation. *H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). In this case, the plaintiff has provided no evidence establishing that the alleged violations of his constitutional rights occurred at the named defendants' direction or with their knowledge and consent. *Id.* Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).

The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* Supervisors cannot be held liable for the errors of their subordinates. *Birch v. Jones*, No. 02 C 2094, 2004 WL 2125416, at *6 (N.D. Ill. Sep. 22, 2004) (Manning, J.), *citing Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th

12

Cir. 2001) (citations omitted). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

In the case at bar, the defendants seem to agree, for purposes of this motion, that they authorized and headed the prison-wide shakedown, including the placement of certain inmates on the segregation yard while their cellhouse was searched. But putting the broad plan in place is not the same as mistreating an individual inmate. If a correctional officer or medical technician was personally aware that the plaintiff was suffering unduly and failed to take any action, then the plaintiff might have had a cause of action against that particular official. However, because the plaintiff has failed to state any facts suggesting that the named defendants were personally involved in–or even aware of–the alleged mistreatment, they are entitled to judgment as a matter of law.

### D. Qualified Immunity

Finally, the court is satisfied that the defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, state officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights. The

court then determines whether those rights were clearly established at the time the alleged violation occurred. *See Wilson*, 526 U.S. at 609; *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008). Only if the rights were clearly established may the official be liable for monetary damages. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997).

Although the plaintiff has a clearly established right to humane conditions of confinement, he has not demonstrated that placing him on the segregation yard during a relatively routine prison security sweep–even handcuffed and under a hot sun for a few hours–violated a constitutional right. Hence, the defendants are entitled to qualified immunity on the plaintiff's Eighth Amendment claim.

## **CONCLUSION**

For all of the foregoing reasons, the defendants' motion for summary judgment is granted. While the plaintiff's confinement on the segregation recreation yard may have been unpleasant, the temporary deprivations he describes, neither individually nor in their totality, rose to the level of a constitutional violation. The court concludes that no reasonable jury could find either that the challenged conditions were objectively serious enough to establish a constitutional violation, or that the defendants had the requisite subjective state of mind to cause or act with deliberate indifference to suffering. Consequently, the Clerk is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56.

If the plaintiff wishes to appeal this final order, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of*

*Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike." The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment [#64] is granted. The Clerk of Court is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

Enter: _____
JAMES B. ZAGEL
United States District Judge

Date: March 31, 2008